UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:25-CR-103-FL-RN-1
No. 5:25-CR-103-FL-RN-2

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | **INDICTMENT** |
| ) | |
| DEBBIE NORRIS WOODELL, and ) | |
| KEVIN LEE TYSON ) | |

The Grand Jury charges:

### General Allegations

At all times relevant to this Indictment:

1. The U.S. Department of Housing and Urban Development ("HUD") was a federal agency whose central mission was to make quality, affordable housing accessible to all Americans. In carrying out this mission, HUD oversaw and funded various programs designed to provide affordable housing for low-income Americans, including the public housing program.[1]

2. HUD was responsible for responsible for administering federal aid to thousands of public housing agencies in the United States. Public housing agencies operated and managed local public housing programs, including monitoring compliance with leases, performing periodic examinations of family income, and ensuring safe, decent, and sanitary housing for residents.

---

[1] Public housing is distinguished from the Housing Choice Voucher Program, commonly referred to as "Section 8" housing. The primary difference is that public housing is government-owned, and Section 8 housing is privately-owned.

3. A HUD Family Report was used to collect information about families applying for or receiving public housing assistance. Among other things, the report captured demographic information, income, assets, and deductions to assess the family's financial situation. Families were required to report all sources of income, including wages, benefits, and other financial support. The total annual income was calculated to determine eligibility for assistance and the amount of assistance provided. Families were required to complete a HUD Family Report at least annually. If there were intervening changes to the family's income or household composition, an interim report was required.

4. The Dunn Housing Authority ("DHA") was a public housing authority consisting of approximately 143 units located in Dunn, North Carolina, within the Eastern District of North Carolina. DHA's mission was to provide safe, decent, and sanitary housing to low-income residents of Dunn. At all relevant times, DHA annually received more than $10,000 in federal assistance.

5. DHA operated under the oversight of HUD and a Board of Commissioners appointed by the Mayor of Dunn. The Board of Commissioners appointed an Executive Director to manage DHA's day-to-day operations. Among other things, the Executive Director developed, implemented, and oversaw the budget, served as the contracting officer for procurements, and issued checks for DHA expenditures.

6. The procurement process at DHA was governed by federal regulations, procurement rules and standards set by HUD, and DHA's implementing policies. Among other things, DHA's procurement policies obligated it to "provide for a

2

procurement system of quality and integrity," to "provide for the fair and equitable treatment of all persons or firms involved in purchasing" by DHA, and to ensure supplies and services were "procured efficiently, effectively, and at the most favorable price available" to DHA. Consistent with these policies, DHA solicited bid proposals for a variety of services, including, but not limited to, lawn care and landscape services.

7. DEBBIE NORRIS WOODELL (WOODELL) resided in the Eastern District of North Carolina. Between 2014 and 2021, WOODELL was DHA's Executive Director. While serving as Executive Director, WOODELL also operated a tax return preparation and bookkeeping business from her residence in Benson, North Carolina.

8. KEVIN LEE TYSON (TYSON) resided in the Eastern District of North Carolina. TYSON has been a DHA tenant since approximately 2015.

## COUNT ONE

9. The preceding paragraphs are incorporated herein as though fully set forth in this count.

10. From in or about 2016 and continuing until at least in or about January 2022, both dates being approximate and inclusive, in the Eastern District of North Carolina, the defendants, DEBBIE NORRIS WOODELL and KEVIN LEE TYSON, together with one or more other persons, known and unknown to the Grand Jury, did knowingly and intentionally combine, conspire, confederate, and agree to commit an offense against the United States, that is, to embezzle, steal, obtain by fraud, convert

3

to the use of any person other than the rightful owner without authority, and misapply public housing funds of the Dunn Housing Authority, an organization receiving benefits in excess of $10,000 under a federal program during any one-year period, in violation of Title 18, United States Code, Section 666(a)(1)(A).

## Manner and Means of Conspiracy

The manner and means used to accomplish the purpose and object of the conspiracy included, but were not limited to, the following:

### *Maintenance Services Scheme*

11. WOODELL fraudulently caused DHA to pay more than $200,000 to TYSON for alleged maintenance services, including lawn care and landscape work.

12. WOODELL intentionally misapplied and diverted DHA's funds to TYSON in an unauthorized manner for unauthorized purposes.

13. To facilitate and conceal the scheme, WOODELL created false and fraudulent invoices and other documents for DHA's files.

14. WOODELL manipulated and deceived DHA's Board of Commissioners in furtherance of the scheme, including making false statements to board members.

15. TYSON concealed the payments from DHA by failing to report the income on a HUD Family Report as required.

### *Personal Expenditures Scheme*

16. WOODELL fraudulently used, and caused to be used, DHA's credit cards and lines of credit for personal expenditures.

17. WOODELL made notations on receipts to falsely make it appear that the purchases were legitimate and for DHA's benefit. For example, between October

4

2019 and December 2020, WOODELL fraudulently used, and caused to be used, DHA's credit card account to purchase over $4,000 in ATV equipment and accessories, including upgrades for a Polaris RZR XP 1000. WOODELL falsely indicated on the receipts that the purchases were for DHA's benefit, including for repairs to the DHA golf cart.

## Overt Acts

In furtherance of the conspiracy, and to accomplish the objects thereof, various overt acts were committed in the Eastern District of North Carolina. These acts included, but were not limited to, the following:

18. On or about June 12, 2017, WOODELL created a fake bid from a legitimate tree service company in Four Oaks, North Carolina.

19. On or about June 24, 2018, WOODELL falsely indicated in DHA records that a refrigerator, range hood, and cooktop were for a renovation at a DHA housing unit when, in fact, the items were for WOODELL's residence.

20. On or about December 19, 2019, WOODELL falsely advised DHA's Board of Commissioners that increased expenses within a subcategory of the maintenance budget were the result of payments to an engineering business when, in fact, the increased expenses were the result of payments to TYSON.

21. On or about December 30, 2020, WOODELL falsely indicated in DHA records that truck tires were purchased for the DHA maintenance vehicle when, in fact, the items were Polaris RZR XP 1000 ATV tires shipped to WOODELL's residence.

22. On or about July 21, 2021, TYSON signed an application for continued occupancy at DHA in connection with the preparation of a HUD Family Report and did not disclose the DHA checks made payable to him.

23. On or about the dates referenced in the table below, each entry of which constitutes a separate overt act, WOODELL issued, and caused to be issued, a DHA check made payable to TYSON that was subsequently negotiated to cash at the specified financial institution:

| Check Date | Amount | Financial Institution |
|---|---|---|
| 06/04/2020 | $5,235.00 | First Citizens Bank |
| 07/06/2020 | $2,625.00 | First Citizens Bank |
| 07/20/2020 | $3,825.00 | First Citizens Bank |
| 08/06/2020 | $2,805.00 | First Citizens Bank |
| 08/17/2020 | $5,650.00 | First Citizens Bank |
| 08/27/2020 | $4,350.00 | First Citizens Bank |
| 09/15/2020 | $5,530.00 | First Citizens Bank |
| 10/15/2020 | $3,450.00 | First Citizens Bank |
| 11/04/2020 | $3,500.00 | First Citizens Bank |
| 11/13/2020 | $3,450.00 | First Citizens Bank |
| 12/01/2020 | $3,475.00 | First Citizens Bank |
| 12/14/2020 | $2,104.00 | First Citizens Bank |
| 02/01/2021 | $3,075.00 | First Citizens Bank |
| 03/04/2021 | $2,965.00 | First Citizens Bank |
| 04/05/2021 | $2,350.00 | First Citizens Bank |
| 06/03/2021 | $5,775.00 | First Citizens Bank |
| 07/07/2021 | $1,300.00 | First Citizens Bank |
| 07/19/2021 | $2,125.00 | First Citizens Bank |
| 09/07/2021 | $3,175.00 | First Citizens Bank |
| 10/14/2021 | $3,130.00 | First Citizens Bank |
| 11/29/2021 | $2,183.81 | First Citizens Bank |

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO

24. The preceding paragraphs are incorporated herein as though fully set forth in this count.

25. Between January 1, 2020, and December 31, 2020, both dates being approximate and inclusive, in the Eastern District of North Carolina, the defendant, DEBBIE NORRIS WOODELL, an agent of an organization that received benefits in excess of $10,000 during such one-year period under a federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of federal assistance through the U.S. Department of Housing and Urban Development, did knowingly embezzle, steal, obtain by fraud, convert to the use of any person other than the rightful owner without authority, and intentionally misapply property valued at $5,000 or more, that is, public housing funds owned by and under the care, custody, and control of the Dunn Housing Authority.

All in violation of Title 18, United States Code, Section 666(a)(1)(A).

## COUNT THREE

26. The preceding paragraphs are incorporated herein as though fully set forth in this count.

27. Between January 1, 2021, and December 31, 2021, both dates being approximate and inclusive, in the Eastern District of North Carolina, the defendant, DEBBIE NORRIS WOODELL, an agent of an organization that received benefits in excess of $10,000 during such one-year period under a federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of federal

assistance through the U.S. Department of Housing and Urban Development, did knowingly embezzle, steal, obtain by fraud, convert to the use of any person other than the rightful owner without authority, and intentionally misapply property valued at $5,000 or more, that is, public housing funds owned by and under the care, custody, and control of the Dunn Housing Authority.

All in violation of Title 18, United States Code, Section 666(a)(1)(A).

## COUNT FOUR

28. The preceding paragraphs are incorporated herein as though fully set forth in this count.

29. On or about July 21, 2021, in the Eastern District of North Carolina, the defendant, KEVIN LEE TYSON, did willfully and knowingly make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the government of the United States, namely, concealing and not disclosing, in connection with the preparation of a HUD Family Report for continued occupancy in public housing, substantial income in the form of DHA checks made payable to him. The statement and representation were false because, as KEVIN LEE TYSON then and there knew, such income was required to be disclosed.

All in violation of Title 18, United States Code, Section 1001(a)(2).

## COUNT FIVE

30. The preceding paragraphs are incorporated herein as though fully set forth in this count.

### Introductory Allegations

31. State Employees' Credit Union (SECU) is a state-chartered credit union, the deposits of which are insured by the National Credit Union Administration.

32. On or about October 29, 2019, SECU pre-approved an $8,000 loan for the purchase of an ATV. WOODELL was a co-applicant on the loan.

33. Among other things, SECU's pre-approval was conditional upon the provision of a recent paystub or tax return for WOODELL.

34. On or about October 30, 2019, WOODELL provided SECU with a false and fabricated federal income tax return (Form 1040) for tax year 2018 that inflated both her wages from DHA and the income from her tax/bookkeeping business. WOODELL also provided SECU with a false and fabricated wage statement (Form W-2) for tax year 2018.

35. On or about October 30, 2019, WOODELL signed a consumer credit application for the $8,000 loan. The gross monthly income amount listed for WOODELL on the application was based on the false documents and information described above.

36. On or about October 30, 2019, after SECU approved the loan, a Polaris RZR XP 1000 was purchased from an ATV dealership in Rockingham, North Carolina, with the $8,000 loan proceeds and cash.

## Charge

37. On or about October 30, 2019, in the Eastern District of North Carolina and elsewhere, the defendant, DEBBIE NORRIS WOODELL did knowingly make, and cause to be made, false statements to SECU in connection with the loan application described herein, such statements having been made for the purpose of influencing in any way the action of SECU, a state-chartered credit union, the deposits of which are insured by the National Credit Union Administration.

All in violation of Title 18, United States Code, Section 1014.

## FORFEITURE NOTICE

Notice is hereby given that all right, title and interest in the property described herein is subject to forfeiture.

Upon conviction of any offense charged herein constituting "specified unlawful activity" (as defined in 18 U.S.C. §§ 1956(c)(7) and 1961(1)), or a conspiracy to commit such offense, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C), as made applicable by 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the said offense.

Upon conviction of any violation of, or conspiracy to violate, Section(s) 215, 656, 657, 1006, 1007, 1014, 1341, 1343, or 1344 of Title 18 of the United States Code affecting a financial institution, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2)(A), any property constituting, or derived from, proceeds obtained directly or indirectly as a result of the said violation.

The forfeitable property includes, but is not limited to, the following:

Forfeiture Money Judgment

a) A sum of money representing the gross proceeds of the offense charged herein against DEBBIE NORRIS WOODELL in the amount of at least $221,975.99.

If any of the above-described forfeitable property, as a result of any act or omission of a defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

**REDACTED VERSION**
Pursuant to the E-Government Act and the federal rules, the unredacted version of this document has been filed under seal.

Date: 05/06/2024

DANIEL P. BUBAR
Acting United States Attorney

ADAM F. HULBIG
Assistant United States Attorney